DECISION AND JUDGMENT ENTRY
{¶ 1} Larry Shoemaker sued his former employer, Community Action Organization of Scioto County for breach of an employment contract. He also sued Community Action, Emily Cobb and Lori Brigner, both of whom are Community Action employees, and two John Doe defendants for defamation in conjunction with a sexual harassment complaint that led to his discharge. After the trial court granted summary judgment to all the defendants on both causes of action, Shoemaker appealed, contending that in granting summary judgment on the defamation claims the trial court erred as a matter of law. We agree. Because the trial court erroneously based its decision on Shoemaker's failure to produce evidence on the issue of special damages, *Page 2 
we must reverse. We do not address the breach of employment contract claim because Shoemaker did not assign it as error.
 I. FACTS {¶ 2} Shoemaker began his employment with Community Action in October of 1990. As a result of allegations of sexual harassment involving co-worker Lori Brigner, Community Action terminated Shoemaker in October of 2004. According to Shoemaker's deposition testimony, he and Ms. Brigner had a romantic relationship, which ended in the spring of 2003. Brigner is the switchboard operator at Community Action. According to Shoemaker, he was wrongly terminated as a result of false accusations that he "talked to her in an inappropriate manner." Emily Cobb apparently is a supervisor at Community Action and was involved in the termination process.
 {¶ 3} After his discharge, Shoemaker filed a complaint that alleged, "Defendants Community Action * * * Lori Brigner and Emily Cobb have wrongfully accused plaintiff of sexual harassment in connection with his employment at Community Action." The complaint also alleged this defamation was "slander per se and libel per se because the statements made were malicious and in connection with plaintiff's occupation." The complaint concluded by alleging Shoemaker had suffered loss of employment, lost wages and mental/emotional anguish.
 {¶ 4} The defendants filed an answer that consisted of a general denial and several affirmative defenses but they did not raise the defense of qualified privilege.
 {¶ 5} Discovery consisted of one set of interrogatories to Shoemaker and his deposition. During that examination, Shoemaker was unable to identify any evidence of the existence of actual malice on the part of any of the defendants. When asked if he *Page 3 
had sought other employment since being terminated he answered, "No." Likewise, he admitted that he was only speculating when he concluded he wouldn't "be able to get a job."
 {¶ 6} After conducting discovery, the defendants filed a motion for summary judgment on the basis "Plaintiff has failed to allege specific requirements which classify per se defamation or slander." While the complaint specifically alleged slander and libel per se, the motion went on to contend Shoemaker could not prevail on defamation per quod because he "has failed to show any damages, economic, medical or otherwise." Interestingly, the memorandum in support of defendants' motion also briefly alluded to the defense of qualified immunity, even though the defendants had not raised it in their answer.
 {¶ 7} Shoemaker filed a memorandum contra but did not file any additional evidentiary materials; he relied upon his own deposition, as did the defendants. Shoemaker's response centered around his contentions that the statements were defamatory per se due to their connection with his loss of employment and their "malicious" nature. He also disputed the lack of evidence on damages, pointing to his loss of employment and wages, as well as mental anguish.
 {¶ 8} After the defendants filed an abbreviated reply, the trial court granted summary judgment to all defendants on both causes of action. In dealing with the defamation claim the judgment entry stated, "that plaintiff, by his own admission, was speculating as to damages." In its only other comment on defamation the judgment entry stated, "The Court further finds that Plaintiff's own testimony fails to establish slander per quod and damages therefore had to be proved." *Page 4 
 II. ASSIGNMENT OF ERROR {¶ 9} In appealing from the trial court's decision, Shoemaker raised one assignment of error:
 THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEES-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
 {¶ 10} As both parties correctly note, our standard of review on summary judgment issues is a familiar one. In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 738 N.E.2d 1243, 1245. Summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. Id. See, also, Bostic v. Connor (1988),37 Ohio St.3d 144, 146, 524 N.E.2d 881 and Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing the there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter summary judgment accordingly. Kulch v.Structural Fibers, Inc., 78 Ohio St.3d 134, 145, 1997- *Page 5 
Ohio-219, 677 N.E.2d 308, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 295, 662 N.E.2d 264.
 III. DEFAMATION {¶ 11} Defamation is a false publication that injures a person's reputation. Dale v. Ohio Civ. Serv. Emp. Assn. (1991),57 Ohio St.3d 112, 117. In Lawson v. AK Steel Corp. (1997), 121 Ohio App.3d 251, 256, the court set forth the elements of a defamation action:
 The essential elements of the common law action of defamation, which includes both libel and slander, are:
 "`(a) a false and defamatory statement concerning another;
 "`(b) an unprivileged publication to a third party;
 "`(c) fault amounting at least to negligence on the part of publisher; and
 "`(d) either actionability of the statement irrespective of special harm or the existence of special harm cause by the publication.'" (Citations omitted.)
 {¶ 12} In general, slander refers to spoken words, while libel addresses words that are written, printed or found in other media. Id. at 256. In addition, there are two types of defamation, per se and per quod. For a communication to defamatory per se, it must be actionable upon the very words spoken without regard to the interpretation of the listener, i.e., it is actionable on its face. By contrast, defamation per quod refers to a communication that is capable of being interpreted as defamatory, i.e., it must be determined by the interpretation of the listener, through innuendo, as being either innocent or damaging. SeeMallory v. Ohio University, Franklin App. No. 01AP-298, 2001 WL 1631329
at 3, citing McCartney v. Oblates of St. Francis of DeSales (1992), *Page 6 80 Ohio App.3d 345, 353. To be defamation per se, the communication must consist of words that: 1) import an indictable criminal offense involving moral turpitude or infamous punishment, 2) impute some loathsome or contagious disease that excludes one from society, or 3) tend to injure one in his trade or occupation. See McCartney at 353.
 {¶ 13} The distinction between defamation per se and per quod is important because it has ramifications upon a plaintiff's burden of pleading and proof on the issue of damages. Notably, when a plaintiff pleads and establishes defamation per se, the plaintiff need not allege or prove any special damages. In fact, general damages are presumed and nominal damages are available in any event. Id. at 354. See, also,Jacobs v. Budak, 156 Ohio App.3d 160, 2004-Ohio-522, ¶ 79; Rainey v.Shaffer (1983), 8 Ohio App.3d 262, 264 and 35 O.Jur.3d, Defamation, §§ 32 and 101.
 IV. TRIAL COURT'S DECISION {¶ 14} As we already noted, the defendant's motion for summary judgment focused upon two related attacks: 1) Shoemaker failed to establish defamation per se and 2) thus his failure to offer evidence of damages was fatal. The trial court apparently concluded the defendants were correct as it granted the motion on the basis that Shoemaker was "speculating as to damages." It also concluded, "Plaintiff's testimony fails to establish slander per quod and damages therefore had to be proven." This last statement appears to be either a scrivener's error or a misstatement of the law. In either event, defendants were not entitled to judgment because Shoemaker presented evidence that the communications were injurious to his employment. Thus they amounted to defamation per se for purposes of summary judgment and Shoemaker theoretically was entitled to at least nominal damages. Moreover, his deposition *Page 7 
testimony established he lost his employment, so the presumption of suffering general damages remained intact.
 {¶ 15} The defendants apparently rely upon the syntax found inTemethy v. Huntington Bancshares, Inc., 2004-Ohio-1253, at ¶ 15,[1]
and other cases for the contention that slander per se is limited to two situations, i.e., words that either 1) import an indictable criminal offense involving moral turpitude or infamous punishment or 2) words that impute some loathsome or contagious disease that excludes one from society or tends to injure one in his trade or occupation. We believe they mislead the cases and the law. Both the Restatement (2 Ed.) Torts and 35 O.Jur.3d, Defamation, support our conclusion that injury to an individual's trade or profession constitutes a separate class of defamation per se, rather than acting as a dependent clause that modifies "some loathsome or contagious disease." See, Restatement (2 Ed.), Torts, §§ 570, 573, 574; O.Jur.3d, Defamation, § 32. Likewise, the court in Jacobs v. Budak, supra, at ¶ 79 recognized statements that injure an individual in his trade or profession constitute defamation (libel) per se. See, also, Gosden v. Louis (1996), 116 Ohio App.3d 195,207, McCartney, supra, at 353.
 {¶ 16} Here, Shoemaker testified that the statements concerning his alleged sexual harassment of a co-worker were false and caused him to lose his job. Accordingly, he presented a claim of defamation per se and had no need to plead or prove special damages.
 {¶ 17} The trial court based its decision on Shoemaker's need to present evidence of special damages and his failure to do so. We conclude it erred as a matter *Page 8 
of law in doing so. Because defendants were not entitled to judgment as a matter of law, we reverse and remand for further proceedings consistent with this opinion.[2]
 JUDGMENT REVERSED AND CAUSE REMANDED.
[1] Temethy loosely describes slander per se as "words which import an indictable criminal offense. . ., imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation."
[2] While this case seems to present a question concerning qualified privilege, we do not address it because the defendants did not raise it in their answer. They did mention it in passing on their memorandum in support of summary judgment. However, we doubt it was properly before the court at that time and it does not appear the trial court considered it in reaching its decision. Thus, we will not usurp the trial court's function by considering it sua sponte. See Murphy v. City ofReynoldsburg (1992), 65 Ohio St.3d 356 at 360. *Page 9